Liza M. Walsh
Katelyn O'Reilly
Christine P. Clark
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASTELLAS PHARMA INC.; ASTELLAS US LLC; ASTELLAS PHARMA US, INC.; MEDIVATION LLC; MEDIVATION PROSTATE THERAPEUTICS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MSN PHARMACEUTICALS INC.; MSN LABORATORIES PRIVATE LIMITED; NOVADOZ PHARMACEUTICALS, LLC,<br><br>Defendants. | Civil Action No. ___________________ |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Astellas Pharma Inc. ("API"), Astellas US LLC ("AUS"), and Astellas Pharma US, Inc. ("APUS") (collectively, "Astellas"), and Medivation LLC and Medivation Prostate Therapeutics LLC ("MPT") (collectively, "Medivation") (all collectively, "Plaintiffs"), for their Complaint against Defendants MSN Pharmaceuticals Inc. ("MSN Pharms."), MSN Laboratories Private Limited ("MSN Labs."), and Novadoz Pharmaceuticals, LLC ("Novadoz") (collectively, "MSN"), hereby allege as follows:

**THE PARTIES**

1. Plaintiff API is a corporation organized and existing under the laws of Japan having its principal place of business at 2-5-1, Nihonbashi-Honcho, Chuo-Ku, Tokyo 103-8411, Japan.

2. Plaintiff AUS is a limited liability company organized and existing under the laws of the state of Delaware having its principal place of business at 2375 Waterview Drive, Northbrook, Illinois 60062, United States.

3. Plaintiff APUS is a corporation organized and existing under the laws of the state of Delaware having its principal place of business at 2375 Waterview Drive, Northbrook, Illinois 60062, United States.

4. Plaintiff Medivation LLC is a limited liability company organized and existing under the laws of the state of Delaware having its principal place of business at 66 Hudson Boulevard East, New York, New York 10001-2192, United States.

5. Plaintiff MPT is a limited liability company organized and existing under the laws of the state of Delaware having its principal place of business at 66 Hudson Boulevard East, New York, New York 10001-2192, United States.

6. On information and belief, Defendant MSN Pharms. is a corporation organized and existing under the laws of the state of Delaware having a principal place of business at 20 Duke Road, Piscataway, New Jersey 08854, United States.

7. On information and belief, MSN Pharms., by itself and/or through its affiliates and agents, including MSN Labs. and Novadoz, is in the business of among other things, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the state of New Jersey and throughout the United States.

8. On information and belief, Defendant MSN Labs. is a corporation organized and existing under the laws of India having a principal place of business at MSN House, Plot No. C-24, Industrial Estate, Sanathnagar, Hyderabad, 500018, Telangana, India.

9. On information and belief, MSN Labs., by itself and/or through its affiliates and agents, including MSN Pharms. and Novadoz, is in the business of among other things, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the state of New Jersey and throughout the United States.

10. On information and belief, Defendant Novadoz is a limited liability company organized and existing under the laws of the state of New Jersey having a principal place of business at 20 Duke Road, Suite A, Piscataway, New Jersey 08854, United States.

11. On information and belief, Novadoz, by itself and/or through its affiliates and agents, including MSN Pharms. and MSN Labs., is in the business of among other things, manufacturing, marketing, importing, preparing, and selling generic pharmaceutical products that it distributes in the state of New Jersey and throughout the United States.

12. On information and belief, MSN Pharms. and Novadoz are subsidiaries of MSN Labs.

13. On information and belief, MSN Pharms., MSN Labs., and Novadoz are agents of each other and/or operate in concert with respect to the development, regulatory approval, marketing, sale, and/or distribution of generic products. On information and belief, the acts of MSN Pharms., MSN Labs., and Novadoz complained of herein were done with the cooperation, participation, and assistance of, and at least in part, for the benefit of, each other.

14. On information and belief, Defendants MSN Pharms., MSN Labs., and Novadoz have cooperated and assisted in the preparation and filing of MSN's Abbreviated New Drug

Application ("ANDA") No. 221866 and will be involved in the manufacture, importation, marketing, and sale of the drug product that is the subject of ANDA No. 221866 if it is approved.

## NATURE OF THE ACTION

15. This is a civil action for the infringement of United States Patent Nos. 11,839,689 ("the '689 patent"), 12,161,628 ("the '628 patent"), 12,502,357 ("the '357 patent"), and 12,447,128 ("the '128 patent") (collectively, the "Xtandi® patents") under the Patent Laws of the United States, 35 U.S.C. § 100 et seq., arising from MSN's filing of ANDA No. 221866 with the United States Food and Drug Administration ("FDA") seeking approval to market generic versions of the pharmaceutical products Xtandi® tablets, 40 and 80 mg, before the expiration of Plaintiffs' patents covering Xtandi® tablets and their use.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

17. This Court has personal jurisdiction over MSN by virtue of the fact that, *inter alia*, MSN has committed the tortious act of patent infringement pursuant to 35 U.S.C. § 271(e)(2)(A) that has led to foreseeable harm and injury to Plaintiffs in the state of New Jersey and throughout the United States.

18. This Court has personal jurisdiction over MSN by virtue of the fact that MSN is at home in New Jersey as reflected by the fact that, on information and belief, MSN regularly does or solicits business in New Jersey, engages in other persistent courses of conduct in New Jersey, and/or derives substantial revenue from services or things used or consumed in New Jersey, including by selling its pharmaceutical products in New Jersey and, therefore, MSN can reasonably expect to be subject to jurisdiction in the New Jersey courts. Among other things, on information

and belief, MSN conducts marketing and sales activities in the state of New Jersey, including, but not limited to, distribution, marketing, and sales of pharmaceutical products to New Jersey residents that are continuous and systematic. On information and belief, if MSN's ANDA No. 221866 is approved, MSN will market and sell its generic versions of Xtandi® tablets in New Jersey.

19. This Court has personal jurisdiction over MSN Pharms. by virtue of the fact that, on information and belief, MSN Pharms. has a principal place of business in New Jersey. MSN Pharms. has an active business entity status registered with the New Jersey Department of Treasury under business entity identification number 0400627791 and maintains a principal place of business at 20 Duke Road, Piscataway, New Jersey 08854. On information and belief, MSN Pharms. has registered with the New Jersey Department of Health as a drug distributor and manufacturer operating in New Jersey under registration number 5006107.

20. This Court has personal jurisdiction over MSN Pharms. and MSN Labs. by virtue of the fact that MSN Pharms. and MSN Labs. have previously submitted to the jurisdiction of this Court and availed themselves of this Court by asserting counterclaims in civil actions initiated in this jurisdiction, including, but not limited to, *e.g.*, *Vifor (Int'l) AG et al. v. MSN Labs. Priv. Ltd. et al.*, No. 3:25-cv-03286 (D.N.J.); *Alkermes, Inc. et al. v. MSN Pharms. Inc. et al.*, No. 1:25-cv-15324 (D.N.J.); *American Regent, Inc. v. MSN Labs. Priv. Ltd. et al.*, No. 3:24-cv-10674 (D.N.J.); *Jazz Pharms. Ir. Ltd. et al. v. Sandoz, Inc. et al.*, No. 3:24-cv-09110 (D.N.J.); *Esperion Therapeutics, Inc. v. MSN Pharms. Inc. et al.*, No. 2:24-cv-06386 (D.N.J.); *AbbVie Inc. et al. v. MSN Pharms. Inc. et al.*, No. 3:24-cv-04662 (D.N.J.); *BeiGene USA, Inc. et al. v. MSN Pharms. Inc. et al.*, No. 3:24-cv-01971 (D.N.J.); *GW Rsch. Ltd. v. Teva Pharms., Inc.*, No. 2:23-cv-03914 (D.N.J.); *GW Rsch. Ltd. v. Teva Pharms., Inc. et al.*, No. 2:23-cv-00018 (D.N.J.); *Bausch Health*

*Ir. Ltd. et al. v. MSN Labs. Priv. Ltd. et al.*, No. 2:21-cv-10057 (D.N.J.); *Mitsubishi Tanabe Pharma Corp. et al. v. MSN Labs. Priv. Ltd. et al.*, No. 3:19-cv-18958 (D.N.J.); *Chiesi USA Inc. et al. v. MSN Pharms. Inc. et al.*, No. 2:19-cv-18564 (D.N.J.); *Mitsubishi Tanabe Pharma Corp. et al. v. MSN Labs. Priv. Ltd. et al.*, No. 1:19-cv-15616 (D.N.J.); *BTG Int'l Ltd. et al. v. MSN Pharms. Inc. et al.*, No. 2:18-cv-02372 (D.N.J.); *Forest Labs., LLC et al. v. MSN Labs. Priv. Ltd. et al.*, No. 2:17-cv-10140 (D.N.J.); *Boehringer Ingelheim Pharms., Inc. et al. v. Aurobindo Pharma USA Inc. et al.*, No. 3:17-cv-07887 (D.N.J.); *Mitsubishi Tanabe Pharma Corp. et al. v. MSN Labs. Priv. Ltd. et al.*, No. 3:17-cv-05302 (D.N.J.); *Sumitomo Dainippon Pharma Co., Ltd. et al. v. MSN Labs. Priv. Ltd. et al.*, No. 2:17-cv-01010 (D.N.J.); *Boehringer Ingelheim Pharms. Inc. et al. v. HEC Pharm Grp. et al.*, No. 3:15-cv-05982 (D.N.J.).

21. Alternatively, assuming that the above facts do not establish personal jurisdiction over MSN Labs., this Court may exercise jurisdiction over MSN Labs. pursuant to Federal Rule of Civil Procedure 4(k)(2) because (a) Plaintiffs' claims arise under federal law; (b) MSN Labs. is a foreign defendant not subject to general personal jurisdiction in the courts of any state; and (c) MSN Labs. has sufficient contacts with the United States as a whole, including, but not limited to manufacturing and/or selling pharmaceutical products distributed throughout the United States, such that this Court's exercise of jurisdiction over MSN Labs. satisfies due process.

22. This Court also has personal jurisdiction over Novadoz by virtue of the fact that, on information and belief, Novadoz is organized in the state of New Jersey and has a principal place of business in New Jersey. Novadoz has an active business entity status registered with the New Jersey Department of Treasury under business entity identification number 0450229624 and maintains a principal place of business at 20 Duke Road, Suite A, Piscataway, New Jersey 08854. On information and belief, Novadoz has registered with the New Jersey Department of Health as

a drug distributor operating in New Jersey under registration number 5005442.

23. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

24. Venue is proper in this judicial district for MSN Pharms. because, among other things, on information and belief, MSN Pharms. has an active business entity status registered with the New Jersey Department of Treasury under business entity identification number 0400627791 and maintains a principal place of business at 20 Duke Road, Piscataway, New Jersey 08854. On information and belief, MSN Pharms. has registered with the New Jersey Department of Health as a drug distributor and manufacturer operating in New Jersey under registration number 5006107. On information and belief, based on MSN Pharms.'s presence in and connections to New Jersey, discoverable information in MSN Pharms.'s possession, custody, or control regarding MSN's ANDA No. 221866 will show that MSN Pharms. engaged in activities in New Jersey relevant to the preparation and/or submission of MSN's ANDA No. 221866.

25. Venue is proper in this judicial district as to MSN Labs. because, among other things, MSN Labs. is a foreign corporation not residing in any United States district and may be sued in any judicial district.

26. Venue is proper in this judicial district for Novadoz because, among other things, on information and belief, Novadoz is organized in the state of New Jersey, has an active business entity status registered with the New Jersey Department of Treasury under business entity identification number 0450229624, and maintains a principal place of business at 20 Duke Road, Suite A, Piscataway, New Jersey 08854. On information and belief, Novadoz has registered with the New Jersey Department of Health as a drug distributor operating in New Jersey under registration number 5005442. On information and belief, based on Novadoz's presence in and connections to New Jersey, discoverable information in Novadoz's possession, custody, or control

regarding MSN's ANDA No. 221866 will show that Novadoz engaged in activities in New Jersey relevant to the preparation and/or submission of MSN's ANDA No. 221866.

27. Venue is further proper in this judicial district as to MSN because, among other things, MSN has committed, or aided, abetted, contributed to, and/or participated in the commission of acts of patent infringement that will lead to foreseeable harm and injury to Plaintiffs, which manufacture Xtandi® for sale and use throughout the United States, including within the state of New Jersey.

**THE XTANDI® TABLET NDA**

28. APUS filed New Drug Application ("NDA") No. 213674 for Xtandi® (enzalutamide) tablets, 40 mg and 80 mg. The FDA approved NDA No. 213674 for Xtandi® 40 mg and 80 mg tablets on August 4, 2020, for the treatment of patients with castration-resistant prostate cancer and metastatic castration-sensitive prostate cancer. On November 16, 2023, the FDA approved an expanded indication for the use of Xtandi® 40 mg and 80 mg tablets to treat patients with non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis. Xtandi® tablets are sold and co-promoted by APUS and Pfizer Inc. in the United States.

29. Enzalutamide is a compound that can be referred to by any of several chemical names, including 4-{3-[4-cyano-3-(trifluoromethyl)phenyl]-5,5-dimethyl-4-oxo-2-sulfanylideneimidazolidin-1-yl}-2-fluoro-N-methylbenzamide, 4-{3-(4-cyano-3-(trifluoromethyl)phenyl)-5,5-dimethyl-4-oxo-2-thioxoimidazolidin-1-yl}-2-fluoro-N-methylbenzamide, 4-[3-[4-cyano-3-(trifluoromethyl)phenyl]-4-keto-5,5-dimethyl-2-thioxo-imidazolidin-1-yl]-2-fluoro-N-methyl-benzamide, and 4-[3-[4-cyano-3-(trifluoromethyl)phenyl]-

5,5-dimethyl-4-oxo-2-sulfanylidene-1-imidazolidinyl]-2-fluoro-N-methylbenzamide, and which has the following chemical structure:




**THE PATENTS-IN-SUIT**

30. On December 12, 2023, the ’689 patent, entitled “Formulations of Enzalutamide,” was duly and legally issued to API and MPT. A true and correct copy of the ’689 patent is attached hereto as Exhibit A.

31. In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the ’689 patent is listed in the FDA’s Approved Drug Products with Therapeutic Equivalence Evaluations (also known as the “Orange Book”) for Xtandi® 40 mg and 80 mg tablets.

32. On December 10, 2024, the ’628 patent, entitled “Combination Therapy,” was duly and legally issued to API and MPT. A true and correct copy of the ’628 patent is attached hereto as Exhibit B.

33. In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the ’628 patent is listed in the Orange Book for Xtandi® 40 mg and 80 mg tablets.

34. On December 23, 2025, the ’357 patent, entitled “Formulations of Enzalutamide,” was duly and legally issued to API and MPT. A true and correct copy of the ’357 patent is attached hereto as Exhibit C.

35. In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the ’357 patent is listed in the Orange Book for Xtandi® 40 mg and 80 mg tablets.

36. On October 21, 2025, the '128 patent, entitled "Formulations of Enzalutamide," was duly and legally issued to API and MPT. A true and correct copy of the '128 patent is attached hereto as Exhibit D.

37. In accordance with 21 U.S.C. § 355(b)(1) and 21 C.F.R. § 314.53, the '128 patent is listed in the Orange Book for Xtandi® 80 mg tablets.

38. Pursuant to an agreement, as amended, entered into between API, AUS, Medivation, Inc., and Medivation Prostate Therapeutics, Inc., API was granted an exclusive license to the Xtandi® patents.

39. Pursuant to an agreement, as amended, entered into between API and AUS, AUS was granted a sublicense to the Xtandi® patents.

40. Pursuant to an agreement entered into between AUS and APUS, APUS was granted a sublicense to the Xtandi® patents.

41. On September 28, 2016, Pfizer Inc. acquired Medivation, Inc. and its wholly owned subsidiary Medivation Prostate Therapeutics, Inc.

42. On August 28, 2017, Medivation, Inc. filed a Certificate of Conversion with the Delaware Secretary of State, in which Medivation, Inc. converted from a corporation to a limited liability company and changed its name to Medivation LLC.

43. On August 28, 2017, Medivation Prostate Therapeutics, Inc. filed a Certificate of Conversion with the Delaware Secretary of State, in which Medivation Prostate Therapeutics, Inc. converted from a corporation to a limited liability company and changed its name to Medivation Prostate Therapeutics LLC.

**CLAIMS FOR RELIEF – PATENT INFRINGEMENT**

44. By a letter dated August 26, 2026 ("MSN's Notice Letter"), MSN advised API and MPT that MSN had submitted ANDA No. 221866 to the FDA seeking approval to manufacture, use, or sell enzalutamide 40 mg and 80 mg tablets ("MSN's Generic Products") prior to the expiration of the '689, '628, '357, and '128 patents.

45. On information and belief, MSN submitted ANDA No. 221866 to the FDA under § 505(j) of the Federal Food, Drug, and Cosmetic Act ("FDCA"), seeking approval to engage in the commercial manufacture, use, and sale of MSN's Generic Products as generic versions of Xtandi® 40 mg and 80 mg tablets.

46. On information and belief, ANDA No. 221866 seeks FDA approval of MSN's Generic Products for the indications of treatment of castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

47. MSN's Notice Letter also advised API and MPT that MSN's ANDA submission included a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) that, in MSN's opinion, the claims of the '689, '628, '357, and '128 patents are invalid, unenforceable, and/or not infringed.

48. MSN's Notice Letter does not allege invalidity under 35 U.S.C. §§ 101, 102, or 112, or unenforceability of any claim of the '689, '628, or '357 patents.

49. By not identifying invalidity defenses under 35 U.S.C. §§ 101, 102, or 112, or unenforceability defenses for the '689, '628, and '357 patents in MSN's Notice Letter, MSN admits the claims of the '689, '628, and '357 patents are valid under 35 U.S.C. §§ 101, 102, and 112, and are enforceable.

50. MSN's Notice Letter does not allege invalidity under 35 U.S.C. §§ 101, 102, 103, or 112, or unenforceability of any claim of the '128 patent.

51. By not identifying invalidity defenses under 35 U.S.C. §§ 101, 102, 103, or 112, or unenforceability defenses for the '128 patent in MSN's Notice Letter, MSN admits the claims of the '128 patent are valid under 35 U.S.C. §§ 101, 102, 103, and 112, and are enforceable.

52. There is an actual, real, immediate, and justiciable controversy between Plaintiffs and MSN regarding the infringement, validity, and enforceability of the Xtandi® patents.

53. Plaintiffs commenced this action within 45 days of receiving MSN's Notice Letter pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

**COUNT I**
**(Infringement of the '689 Patent)**

54. Plaintiffs incorporate each of the preceding paragraphs 1 to 53 as if fully set forth herein.

55. By submitting ANDA No. 221866 to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of MSN's Generic Products throughout the United States, including New Jersey, prior to expiration of the '689 patent, MSN committed an act of infringement of the '689 patent under 35 U.S.C. § 271(e)(2)(A).

56. The '689 patent claims, *inter alia*, pharmaceutical compositions of enzalutamide. Claim 1 recites "a pharmaceutical composition comprising a solid dispersion consisting essentially of amorphous enzalutamide and hydroxypropyl methylcellulose acetate succinate" ("HPMCAS"). Certain dependent claims specify that the formulation is a tablet.

57. The formulation of Xtandi® tablets, 40 and 80 mg, contains a pharmaceutical composition comprising a solid dispersion consisting essentially of amorphous enzalutamide and HPMCAS. The formulation of Xtandi® tablets, 40 and 80 mg, is covered by the ’689 patent.

58. MSN’s Notice Letter does not dispute that MSN’s Generic Products are tablets, that those tablets contain a solid dispersion of amorphous enzalutamide, or that those tablets contain HPMCAS.

59. On information and belief, MSN copied the claimed inventions of the ’689 patent.

60. On information and belief, MSN was not required to copy the claimed inventions of the ’689 patent or the Xtandi® tablets formulation.

61. On information and belief, MSN’s Generic Products, if approved by the FDA, will contain a pharmaceutical composition comprising a solid dispersion consisting essentially of amorphous enzalutamide and HPMCAS or an equivalent thereof, which will constitute infringement of claims of the ’689 patent.

62. On information and belief, MSN’s manufacture, use, sale, offer for sale, and/or importation into the United States of MSN’s Generic Products prior to the expiration of the ’689 patent, including any applicable exclusivities or extensions, will directly infringe the ’689 patent under 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents. MSN will infringe one or more claims of the ’689 patent.

63. On information and belief, MSN was aware of the existence of the ’689 patent and its listing in the Orange Book as demonstrated by MSN’s reference to the ’689 patent in MSN’s Notice Letter.

64. On information and belief, MSN knows or should know that its commercial manufacture, use, offer for sale, sale, and/or importation of MSN's Generic Products prior to patent expiry will infringe one or more claims of the '689 patent.

65. On information and belief, MSN's statement of the purported factual and legal bases for MSN's opinions regarding non-infringement and invalidity of the '689 patent is devoid of an objective good faith basis in either the facts or the law. This case is exceptional.

66. Plaintiffs will be substantially and irreparably harmed by the infringing activities described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

**COUNT II**
**(Infringement of the '628 Patent)**

67. Plaintiffs incorporate each of the preceding paragraphs 1 to 66 as if fully set forth herein.

68. By submitting ANDA No. 221866 to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of MSN's Generic Products throughout the United States, including New Jersey, prior to the expiration of the '628 patent, MSN committed an act of infringement of the '628 patent under 35 U.S.C. § 271(e)(2)(A).

69. On information and belief, MSN was aware of the existence of the '628 patent and its listing in the Orange Book as demonstrated by MSN's reference to the '628 patent in MSN's Notice Letter.

70. On information and belief, MSN intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of MSN's Generic Products

with prescribing information ("the label") immediately and imminently upon final approval of MSN's ANDA No. 221866.

71. The '628 patent claims, *inter alia*, methods of treating prostate cancer in patients to whom rifampin is administered. Claim 1 recites a "method of treating prostate cancer in a patient to whom rifampin is administered, comprising co-administering to the patient a daily dose of 240 mg of enzalutamide."

72. On information and belief, MSN's manufacture, use, sale, offer for sale, and/or importation into the United States of MSN's Generic Products prior to the expiration of the '628 patent, including any applicable exclusivities or extensions, will actively induce infringement of at least Claim 1 of the '628 patent under 35 U.S.C. § 271(b). MSN will take affirmative steps, including at least inserting language in the label for MSN's Generic Products that MSN knows instructs, promotes, encourages, and will inevitably cause healthcare providers, caregivers, and/or patients to co-administer a 240 mg daily dose of enzalutamide in MSN's Generic Products to treat prostate cancer in a patient to whom rifampin is administered according to Claim 1 of the '628 patent.

73. On information and belief, the label for MSN's Generic Products will have instructions for use that substantially copy the instructions for Xtandi® tablets, which disclose and encourage the practice of all the elements of Claim 1 of the '628 patent.

74. Upon information and belief, the label for MSN's Generic Products will direct the use of MSN's Generic Products for the following indications: treatment of patients with castration-resistant prostate cancer, treatment of patients with metastatic castration-sensitive prostate cancer, and treatment of patients with non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis. On information and belief, the label for

MSN's Generic Products will identify rifampin as a strong CYP3A4 inducer that decreases plasma concentrations of enzalutamide and its active metabolite and direct the co-administration of MSN's Generic Products at a dose of 240 mg orally once daily in patients who are receiving rifampin.

75. On information and belief, MSN's Generic Products, if approved by the FDA, will be prescribed and administered to human patients to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and/or non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis, who are also receiving rifampin, at a daily dose of 240 mg/day, which will constitute infringement of at least Claim 1 of the '628 patent. This will be an approved use of MSN's Generic Products.

76. On information and belief, this directly infringing use will occur with MSN's specific intent and active encouragement and will be a use that MSN knows or should know will occur.

77. On information and belief, MSN copied the claimed inventions of the '628 patent.

78. On information and belief, MSN will actively induce, encourage, aid, and abet infringing prescription and administration, with knowledge and specific intent that this use will be in contravention of Plaintiffs' rights under the '628 patent.

79. On information and belief, MSN's acts will be performed with knowledge of the '628 patent and with specific intent and active encouragement of infringement prior to patent expiry.

80. On information and belief, MSN's statement of the purported factual and legal bases for MSN's opinions regarding non-infringement and invalidity of the '628 patent is devoid of an objective good faith basis in either the facts or the law. This case is exceptional.

81. Plaintiffs will be substantially and irreparably harmed by the infringing activities described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

**COUNT III**
**(Infringement of the ’357 Patent)**

82. Plaintiffs incorporate each of the preceding paragraphs 1 to 81 as if fully set forth herein.

83. By submitting ANDA No. 221866 to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of MSN’s Generic Products throughout the United States, including New Jersey, prior to expiration of the ’357 patent, MSN committed an act of infringement of the ’357 patent under 35 U.S.C. § 271(e)(2)(A).

84. On information and belief, MSN was aware of the existence of the ’357 patent and its listing in the Orange Book as demonstrated by MSN’s reference to the ’357 patent in MSN’s Notice Letter.

85. On information and belief, MSN intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of MSN’s Generic Products with the label immediately and imminently upon final approval of MSN’s ANDA No. 221866.

86. The ’357 patent claims a method of treating prostate cancer comprising administering a pharmaceutical composition of enzalutamide. Claim 1 recites a “method of treating prostate cancer comprising administering to a patient in need thereof a tablet comprising a solid dispersion comprising amorphous enzalutamide and hydroxypropyl methylcellulose acetate succinate.”

87. Xtandi® tablets, 40 and 80 mg, are tablets comprising a solid dispersion comprising amorphous enzalutamide and HPMCAS. Xtandi® tablets are indicated to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis. The use of Xtandi® tablets, 40 and 80 mg, is covered by the '357 patent.

88. MSN's Notice Letter does not dispute that MSN's Generic Products are tablets, that those tablets contain a solid dispersion of amorphous enzalutamide, that those tablets contain HPMCAS, or that those tablets will be used to treat prostate cancer.

89. On information and belief, MSN's Generic Products, if approved by the FDA, will be tablets comprising a solid dispersion comprising amorphous enzalutamide and HPMCAS or an equivalent thereof.

90. On information and belief, MSN's Generic Products, if approved by the FDA, will be prescribed and administered to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

91. On information and belief, MSN's manufacture, use, sale, offer for sale, and/or importation into the United States of MSN's Generic Products prior to the expiration of the '357 patent, including any applicable exclusivities or extensions, will actively induce infringement of the '357 patent under 35 U.S.C. § 271(b) and will constitute contributory infringement of the '357 patent under 35 U.S.C. § 271(c). MSN will take affirmative steps, including at least inserting language in the label for MSN's Generic Products that MSN knows instructs, promotes, encourages, and will inevitably cause healthcare providers, caregivers, and/or patients to treat

prostate cancer by administering a tablet comprising a solid dispersion comprising amorphous enzalutamide and HPMCAS or an equivalent thereof according to Claim 1 of the ’357 patent.

92. On information and belief, the label for MSN’s Generic Products will have instructions for use that substantially copy the instructions for Xtandi® tablets, which encourage the practice of all the elements of Claim 1 of the ’357 patent.

93. Upon information and belief, the label for MSN’s Generic Products will direct the use of MSN’s Generic Products for the following indications: treatment of patients with castration-resistant prostate cancer, treatment of patients with metastatic castration-sensitive prostate cancer, and treatment of patients with non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

94. On information and belief, MSN’s Generic Products, if approved by the FDA, will be prescribed and administered to human patients to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and/or non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis, which will constitute infringement of Claim 1 of the ’357 patent. This will be an approved use of MSN’s Generic Products.

95. On information and belief, this directly infringing use will occur with MSN’s specific intent and active encouragement and will be a use that MSN knows or should know will occur.

96. On information and belief, MSN copied the claimed invention of the ’357 patent.

97. On information and belief, MSN was not required to copy the claimed invention of the ’357 patent or the Xtandi® tablets formulation.

98. On information and belief, MSN will actively induce, encourage, aid, and abet infringing prescription and administration, with knowledge and specific intent that this use will be in contravention of Plaintiffs' rights under the '357 patent.

99. On information and belief, MSN knows or should know that MSN's Generic Products will be especially made or especially adapted for use in a manner that will constitute infringement of the '357 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

100. On information and belief, MSN's acts will be performed with knowledge of the '357 patent and with specific intent and active encouragement of infringement prior to patent expiry.

101. On information and belief, MSN's statement of the purported factual and legal bases for MSN's opinions regarding non-infringement and invalidity of the '357 patent is devoid of an objective good faith basis in either the facts or the law. This case is exceptional.

102. Plaintiffs will be substantially and irreparably harmed by the infringing activities described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

**COUNT IV**
**(Infringement of the '128 Patent)**

103. Plaintiffs incorporate each of the preceding paragraphs 1 to 102 as if fully set forth herein.

104. By submitting ANDA No. 221866 to the FDA to obtain approval under the FDCA to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of MSN's Generic Products throughout the United States, including New Jersey, prior to expiration of the

’128 patent, MSN committed an act of infringement of the ’128 patent under 35 U.S.C. § 271(e)(2)(A).

105. On information and belief, MSN was aware of the existence of the ’128 patent and its listing in the Orange Book as demonstrated by MSN’s reference to the ’128 patent in MSN’s Notice Letter.

106. On information and belief, MSN intends to engage in the commercial manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of MSN’s Generic Products with the label immediately and imminently upon final approval of MSN’s ANDA No. 221866.

107. The ’128 patent claims, *inter alia*, methods of treating prostate cancer comprising administering a pharmaceutical composition of enzalutamide. For example, Claim 3 recites a “method of treating prostate cancer comprising: orally administering to a male human in need thereof two tablets, wherein each of the two tablets comprises: (a) a spray-dried dispersion consisting essentially of 80 mg amorphous enzalutamide and 400 mg hydroxypropyl methylcellulose acetate succinate; and (b) one or more inactive excipients; wherein the amorphous enzalutamide remains amorphous following storage of the spray-dried dispersion at 40° C. and 75% relative humidity for one month.”

108. Xtandi® tablets, 80 mg, are tablets comprising a spray-dried dispersion consisting essentially of 80 mg amorphous enzalutamide and 400 mg HPMCAS, and one or more inactive excipients, wherein the amorphous enzalutamide remains amorphous following storage of the spray-dried dispersion at 40° C. and 75% relative humidity for one month. Xtandi® tablets are indicated for oral administration to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with

biochemical recurrence at high risk for metastasis. The use of Xtandi® tablets, 80 mg, is covered by the ’128 patent.

109. MSN’s Notice Letter does not dispute that MSN’s 80 mg Generic Products are tablets; that those tablets contain 80 mg of enzalutamide, a solid dispersion of amorphous enzalutamide, HPMCAS, or one or more inactive excipients; that those tablets will be used orally to treat prostate cancer; or that the amorphous enzalutamide in the tablets remains amorphous following storage at 40° C. and 75% relative humidity for one month.

110. On information and belief, MSN’s 80 mg Generic Products, if approved by the FDA, will be tablets comprising a spray-dried dispersion consisting essentially of 80 mg amorphous enzalutamide and 400 mg HPMCAS or an equivalent thereof, and one or more inactive excipients, wherein the amorphous enzalutamide remains amorphous following storage of the spray-dried dispersion at 40° C. and 75% relative humidity for one month.

111. On information and belief, MSN’s 80 mg Generic Products, if approved by the FDA, will be prescribed and administered orally to male humans to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

112. On information and belief, MSN’s manufacture, use, sale, offer for sale, and/or importation into the United States of MSN’s 80 mg Generic Products prior to the expiration of the ’128 patent, including any applicable exclusivities or extensions, will actively induce infringement of at least Claim 3 of the ’128 patent under 35 U.S.C. § 271(b) and will constitute contributory infringement of at least Claim 3 of the ’128 patent under 35 U.S.C. § 271(c). MSN will take affirmative steps, including at least inserting language in the label for MSN’s Generic Products that MSN knows instructs, promotes, encourages, and will inevitably cause healthcare providers,

caregivers, and/or patients to treat prostate cancer by administering two tablets, wherein each of the two tablets comprises: (a) a spray-dried dispersion consisting essentially of 80 mg amorphous enzalutamide and 400 mg HPMCAS or an equivalent thereof; and (b) one or more inactive excipients; wherein the amorphous enzalutamide remains amorphous following storage of the spray-dried dispersion at 40° C. and 75% relative humidity for one month according to Claim 3 of the ’128 patent.

113. On information and belief, the label for MSN’s 80 mg Generic Products will have instructions for use that substantially copy the instructions for Xtandi® 80 mg tablets, which encourage the practice of all the elements of at least Claim 3 of the ’128 patent.

114. Upon information and belief, the label for MSN’s 80 mg Generic Products will direct the use of MSN’s 80 mg Generic Products for the following indications: treatment of patients with castration-resistant prostate cancer, treatment of patients with metastatic castration-sensitive prostate cancer, and treatment of patients with non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis.

115. On information and belief, MSN’s 80 mg Generic Products, if approved by the FDA, will be prescribed and administered to human patients to treat castration-resistant prostate cancer, metastatic castration-sensitive prostate cancer, and/or non-metastatic castration-sensitive prostate cancer with biochemical recurrence at high risk for metastasis, which will constitute infringement of at least Claim 3 of the ’128 patent. This will be an approved use of MSN’s Generic Products.

116. On information and belief, this directly infringing use will occur with MSN’s specific intent and active encouragement and will be a use that MSN knows or should know will occur.

117. On information and belief, MSN copied the claimed inventions of the ’128 patent.

118. On information and belief, MSN was not required to copy the claimed inventions of the ’128 patent or the Xtandi® tablets formulation.

119. On information and belief, MSN will actively induce, encourage, aid, and abet infringing prescription and administration, with knowledge and specific intent that this use will be in contravention of Plaintiffs’ rights under the ’128 patent.

120. On information and belief, MSN knows or should know that MSN’s 80 mg Generic Products will be especially made or especially adapted for use in a manner that will constitute infringement of the ’128 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

121. On information and belief, MSN’s acts will be performed with knowledge of the ’128 patent and with specific intent and active encouragement of infringement prior to patent expiry.

122. On information and belief, MSN’s statement of the purported factual and legal bases for MSN’s opinions regarding non-infringement of the ’128 patent is devoid of an objective good faith basis in either the facts or the law. This case is exceptional.

123. Plaintiffs will be substantially and irreparably harmed by the infringing activities described above unless those activities are precluded by this Court. Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A. A judgment that MSN has infringed one or more claims of United States Patent Nos. 11,839,689, 12,161,628, 12,502,357, and 12,447,128 by submitting and maintaining ANDA No. 221866 seeking FDA approval for the commercial manufacture, use, offer for sale, sale, and/or importation of MSN's Generic Products before the expiration of the patents under 35 U.S.C. § 271(e)(2)(A);

B. A judgment that MSN's commercial manufacture, use, offer for sale, sale in, and/or importation into the United States of MSN's Generic Products will infringe one or more claims of United States Patent Nos. 11,839,689, 12,161,628, 12,502,357, and 12,447,128 under 35 U.S.C. §§ 271(a), (b) and/or (c);

C. A permanent injunction under 35 U.S.C. §§ 271(e)(4)(B) and/or 283 restraining and enjoining MSN, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, from engaging in the commercial manufacture, use, offer for sale, sale in, and/or importation into the United States of MSN's Generic Products prior to the expiration date of United States Patent Nos. 11,839,689, 12,161,628, 12,502,357, and 12,447,128, inclusive of any extensions;

D. An order under 35 U.S.C. § 271(e)(4)(A) that the effective date of any FDA approval of ANDA No. 221866 under Section 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)) shall be a date that is not earlier than the expiration date of United States Patent Nos. 11,839,689, 12,161,628, 12,502,357, and 12,447,128, inclusive of any extensions;

E. A declaration that this case is "exceptional" under 35 U.S.C. § 285 and an award of attorney fees;

F. An award of costs and expenses in this action; and

G. Such other and further relief as the Court may deem just and proper.

Dated: October 9, 2026

*/s/Liza M. Walsh*
Liza M. Walsh
Katelyn O'Reilly
Christine P. Clark
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

*Attorneys for Plaintiffs*

*OF COUNSEL*:

Dominick A. Conde (*phv forthcoming*)
William E. Solander (*phv forthcoming*)
Erin J.D. Austin
Whitney M. Howard (*phv forthcoming*)
Alexis M. McJoynt
Michelle V. Lavrichenko (*phv forthcoming*)
VENABLE LLP
151 West 42nd Street
New York, NY 10036

## LOCAL RULE 11.2 CERTIFICATION

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending litigation in any court, administrative proceeding, or arbitration proceeding, nor are there any non-parties known to Plaintiffs that should be joined to this action, but this action is related to the following action:

- *Astellas Pharma Inc. et al. v. Alembic Pharms. Ltd. et al.*, No. 3:26-cv-12995, pending in the United States District Court for the District of New Jersey.

Dated: October 9, 2026

*/s/ Liza M. Walsh*

Liza M. Walsh
Katelyn O'Reilly
Christine P. Clark
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

*OF COUNSEL:*

Dominick A. Conde (*phv forthcoming*)
William E. Solander (*phv forthcoming*)
Erin J.D. Austin
Whitney M. Howard (*phv forthcoming*)
Alexis M. McJoynt
Michelle V. Lavrichenko (*phv forthcoming*)
VENABLE LLP
151 West 42nd Street
New York, NY 10036

**LOCAL RULE 201.1 CERTIFICATION**

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that the Plaintiffs seek, *inter alia*, injunctive relief.

Dated: October 9, 2026

*/s/ Liza M. Walsh*
Liza M. Walsh
Katelyn O'Reilly
Christine P. Clark
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, NJ 07102
(973) 757-1100

*OF COUNSEL:*

Dominick A. Conde (*phv forthcoming*)
William E. Solander (*phv forthcoming*)
Erin J.D. Austin
Whitney M. Howard (*phv forthcoming*)
Alexis M. McJoynt
Michelle V. Lavrichenko (*phv forthcoming*)
VENABLE LLP
151 West 42nd Street
New York, NY 10036